# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                        )
LISA MUKHERJEE,                         )
                                        )
      Plaintiff,                     )
                                        )    **Civil Action No.**
      v.                             )    **12-11381-FDS**
                                        )
JACKIE BLAKE and JANET ANDERSEN,  )
                                        )
      Defendants.                    )
_____)


## MEMORANDUM AND ORDER ON
## DEFENDANTS' MOTION TO DISMISS

**SAYLOR, J.**

      This is a civil action alleging workplace discrimination and harassment on the basis of national origin and skin color in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*  Plaintiff Lisa Mukherjee was employed by the Center for Biostatistics in AIDS Research at the Harvard School of Public Health ("CBAR").  Defendant Jacqueline Blake was the Director of Finance and Administration at CBAR, and defendant Janet Andersen served as its Executive Director.  Mukherjee was terminated in January 2010, after almost ten years of employment at CBAR.  She contends that defendants harassed and adversely treated her while she was employed at CBAR, including intentionally mishandling work-authorization paperwork to create a pretextual reason for her ultimate termination.  She is proceeding *pro se*.

      Defendant has moved under Fed. R. Civ. P. 12(b)(5) and 12(b)(6) to dismiss the complaint for insufficient service of process and failure to state a claim upon which relief can be granted.  For the reasons stated below, the motion will be granted.

I.      **Background**

The following factual allegations are drawn from the complaint and the attached exhibits, as well as matters incorporated by reference and matters of public record.  *See Trans-Spec Truck Serv. v. Caterpillar*, 524 F.3d 315, 321 (1st Cir. 2008).[1]

Lisa Mukherjee, who is of East Indian descent, worked as a statistician at CBAR until January 2010.  (*See* Compl. ¶1; Mot. at Ex. 4).  She alleges that throughout her employment she was discriminated against based on her national origin and skin color.  She specifically alleges that CBAR Executive Director Janet Andersen believed that "Aryans are a superior race," and that Andersen's belief motivated her treatment of employees at CBAR.  (*See* Compl. ¶¶ 1, 9).  Mukherjee alleges that because of her minority status she was, among other things, not paid her relocation costs; not permitted to attend a professional conference; given lower performance ratings; and not promoted at the requisite time.  (*See* Compl. ¶ 9).  According to Mukherjee, her immediate supervisors consistently rated her performance higher than the steering committee, of which Andersen was the head.  (*See id.*).

---

[1] Plaintiff attached the dismissal of her charge by the U.S. Equal Employment Opportunity Commission ("EEOC") as Exhibit 1 to her complaint.  As its reasoning for dismissing the charge, the EEOC stated that it "adopted the findings of the state or local fair employment practices agency."  (Compl. at Ex. 1).  Subsequently, defendants attached the plaintiff's filing with the Massachusetts Commission Against Discrimination ("MCAD"), which is the state agency in Massachusetts that handles claims of employment discrimination, as Exhibit 4 to their motion to dismiss.  Because the findings of the MCAD were referred to in Exhibit 1 to the complaint, the MCAD's records on the matter, including the submitted filing, are also properly before the Court and may be considered on a motion to dismiss without converting it to a motion for summary judgment under Fed. R. Civ. P. 56.  *See Clorox Co. P. R. v. Procter & Gamble Comm. Co.*, 228 F.3d 24, 32 (1st Cir. 2000) (holding that, in ruling on a Rule 12(b)(6) motion, a district court "'may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint'") (internal citations omitted); *see also Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) ("Ordinarily, of course, any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden, unless the proceeding is properly converted into one for summary judgment under Rule 56. See Fed. R. Civ. P. 12(b)(6).  However, courts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.").

At some point during Mukherjee's employment, CBAR had to complete and file paperwork in order to continue her work authorization, presumably with U.S. Citizenship and Immigration Services.  She alleges that Jackie Blake, CBAR's Director of Finance and Administration, along with Andersen, intentionally neglected to complete and file that paperwork.  (*See* Compl. ¶¶  2-3).

Mukherjee was terminated on January 29, 2010.  The stated reason for the termination was the lack of current work-authorization paperwork.  (*See* Compl. ¶  3).  She alleges that this reason was pretextual, and that the real motivation for her termination was discrimination against minorities and retaliation for not ascribing to Andersen's discriminatory theories of racial hierarchy.  (*See* Compl. ¶ 10).

On November 19, 2010, Mukherjee filed a charge of discrimination against CBAR with the MCAD, which she cross-filed with the EEOC.  (Mot. at 8; *see also* Mot. at Ex. 4).  In the charge, she advanced substantially the same allegations as those contained in the complaint.  She mentioned both Blake and Andersen in describing the particulars of her claim, but did not name them as respondents.  (*See* Mot. at Ex. 4).  The MCAD dismissed the charge on September 29, 2011, based on a finding that there was not sufficient probable cause to support it; the EEOC subsequently adopted that finding.  (*See* Mot. at 8, n. 6).  Mukherjee filed an untimely appeal with the MCAD on December 29, 2011, which the MCAD denied on January 10, 2012.  (*See id.*).

On July 27, 2012, Mukherjee filed this action against Blake and Andersen, seeking relief under Title VII.  Blake and Andersen have moved to dismiss the complaint under Rules 12(b)(5) and 12(b)(6).

## II.     Analysis

### A.     Rule 12(b)(5) Motion

#### 1.     Service of Process Generally

Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirements of service of process must be satisfied.  *Omni Capital Int'l Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987).  Rule 4 sets forth the acceptable methods by which service of process can be effected.  Under Rule 4(e), there are four ways in which an individual defendant can be served within a judicial district of the United States:  (1) by following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made (here, Massachusetts); (2) by delivering a copy of the summons and of the complaint to the individual personally; (3) by leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (4) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.  Fed. R. Civ. P. 4(e).

The Massachusetts rules for service are substantially similar to the other three options under the federal rules.  Service can be made upon "an individual by delivering a copy of the summons and of the complaint to him personally; or by leaving copies thereof at his last and usual place of abode; or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by statute to receive service of process, provided that any further notice required by such statute be given."  Mass. R. Civ. P. 4(d)(1).  Massachusetts rules permit service by mail only for service of process outside the Commonwealth.  *See* Mass. R. Civ. P. 4(e).  Notably, neither the federal rules nor the Massachusetts rules permit service upon an

individual by *certified mail* at her *place of employment*.

Furthermore, under the federal rules, service of process has to take place within 120 days after the complaint is filed, or the court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). However, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.*

### 2.     **Plaintiff's Attempt to Effect Service**

When the sufficiency of process is challenged under Rule 12(b)(5), plaintiff bears "the burden of proving proper service." *Lopez v. Municipality of Dorado*, 979 F.2d 885, 887 (1st Cir. 1992). Plaintiff has not met that burden here.

The complaint in this action was filed on July 27, 2012. The 120-day period under Rule 4(m) expired on November 25, 2012, which was a Sunday. Under Fed. R. Civ. P. 6(a)(3), plaintiff therefore had until the following Monday, or November 26, to serve process on defendants. Defendants allege that they did not receive the certified-mail delivery of the complaint and summons until November 27. Plaintiff has not filed returns of service with the Court, and there is no evidence of any other attempts to serve defendants.

Plaintiff's attempt to serve defendants appears to be deficient in at least two ways. First, as noted above, neither the federal rules nor the Massachusetts rules permit service of process by certified mail upon individual defendants residing within the Commonwealth. *See* Fed. R. Civ. P. 4(e); Mass. R. Civ. P. 4(d) and (e). Plaintiff's only attempt to serve defendants was by certified mail delivered to their place of employment. Accordingly, the attempted service was procedurally deficient.

Second, defendants may not have received the certified mail within the proscribed 120-day time period.   Although plaintiff sent the summons and complaint by certified mail prior to the expiration of the period, "service by mail under Rule 4 [when permitted] is generally held not to be effected until the day the mail is *received*."  *Furtado v. Napolitano*, 2010 WL 577938, (D.Mass. 2010) (Zobel, J.) (emphasis added) (collecting cases from multiple circuits).  Plaintiff has offered some evidence, in the form of return receipts, indicating that the certified mail may have been delivered to CBAR on November 26.  There is no evidence, however, as to what time of day that delivery took place or whether CBAR has an internal mail delivery process that is initiated after mail from the postal service arrives at the office building.  The spirit of Rule 4 and the policy underlying it dictate that the relevant point is when the defendants themselves actually received notice.  *See United States v. Ayer*, 857 F.2d 881, 884 (1st Cir.1988) ("[U]ntil the defendants receive some formal notice of the institution of the action, they are not assured a meaningful opportunity to discover, marshall, and preserve evidence, that is, to prepare a defense.").  The Court does not have sufficient evidence to determine precisely when defendants received the summons and complaint that were sent to their place of employment by certified mail.  Accordingly, the Court finds that plaintiff has not met her burden of proving timely service of process.

### 3.      Extending the Time for Service

Defendants contend that there is no "good cause" for plaintiff's failure to serve process in a timely manner.  Nor has plaintiff explicitly asked for a good-cause extension.  Instead, her opposition implicitly seeks the court's indulgence in light of her *pro se* status and her request for a court-appointed attorney:  "Plaintiff requested the court for an attorney to be assigned and

waited as long as possible.  Finally, plaintiff mailed the summons to the defendants at their

known address. . . . "  (Pl. Opp. at 1).  Plaintiff also suggests that she was willing to effectuate in-

person service herself, but was unable to do so as a result of an outstanding "no trespass warning

which stated that plaintiff will be arrested if she steps into the building."  (*Id.*).[2]

"Good cause is likely (but not always) to be found when the plaintiff[']s failure to

complete service in [a] timely fashion is a result of a third person, typically the process server,

the defendant has evaded service of the process or engaged in misleading conduct, the plaintiff

has acted diligently in trying to effect service or there are understandable mitigating

circumstance[s], *or the plaintiff is proceeding pro se* or in forma pauperis.  Pro se status or any

of the other listed explanations for a failure to make timely service, however, is not

automatically enough to constitute good cause for purposes of Rule 4(m)."  *McIsaac v. Ford*,

193 F. Supp. 2d 382, 383 (D. Mass. 2002) (emphasis added) (citing ALAN WRIGHT & ARTHUR R.

MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1137 (3d ed. 2002)).

Plaintiff did not "complete[] all of the steps within [her] power necessary to effectuate

such service."  *Benjamin v. Grosnick*, 999 F.2d 590, 592 (1st Cir. 1993) (finding that plaintiffs

reasonably relied on the deputy sheriff's sworn representations in the return of service).  But

plaintiff is proceeding *pro se*.  Moreover, relatively recent amendments to Rule 4(m) "were

meant to introduce a more liberal regime, particularly to benefit pro se litigants whose good faith

missteps in effecting service might unfairly deprive them of their day in court."  *McIsaac*, 193 F.

---

[2] This latter point is irrelevant to the Court's consideration of "good cause," because as a party to this action, plaintiff would not be not permitted to serve process in any event under Fed. R. Civ. P. 4(c)(2). Massachusetts law concerning service by parties is to the same effect:  "Except [with regard to exceptions not relevant here] service of all process shall be made by a sheriff, by his deputy, or by a special sheriff; by any other person duly authorized by law; [or] by some person specially appointed by the court for that purpose . . . "  Mass. R. Civ. P. 4(c).

Supp. 2d at 384.  *But see Bartz v. Adrian*, 169 Fed. Appx. 241 (5th Cir. 2006) ("Pro se status and

ignorance of the relevant rules of service do not excuse a plaintiff's failure to effect service.").

      Even if plaintiff's missteps do not amount to good cause such that the Court *must* grant

plaintiff an extension of time, the Court nonetheless has discretion under Rule 4(m), even absent

a showing of good cause, to extend the time for service.  *Oyama v. Sheehan*, 253 F.3d 507, 513

(9th Cir. 2001) (citing *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995)).

      Because there is no evidence of dilatory motive or bad faith on plaintiff's part, and

defendants have not pointed to any prejudice they would suffer if the time for service was

extended, such a discretionary remedy may have been warranted.  However, because the Court

finds that plaintiff's complaint fails to state a claim upon which relief can be granted and

therefore must be dismissed, the issue of whether to extend the time period for service of process

is moot.

      **B.**      **Rule 12(b)(6) Motion**

          **1.**      **Standard of Review**

      On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must

assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable

inferences therefrom."  *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007)

(citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  To survive a motion to dismiss, the

complaint must state a claim that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007).  That is, "[f]actual allegations must be enough to raise a right to relief above the

speculative level, . . . on the assumption that all the allegations in the complaint are true (even if

doubtful in fact)."  *Id.* at 555 (citations omitted).  "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

      **2.**      <u>**Title VII Claims**</u>

      **a.**      <u>**Exhaustion of Administrative Remedies**</u>

It is well-established that prior to filing a civil action for employment discrimination in this Court under Title VII, a plaintiff must first file a timely charge of discrimination with the appropriate administrative agency—the EEOC for claims under federal law, and the MCAD for claims under state law. *Lattimore v. Polaroid Corp.*, 99 F.3d 456, 464 (1st Cir. 1996). A charge of discrimination must be filed with the EEOC and/or MCAD within 300 days after the unlawful conduct occurred. The litigant has exhausted administrative remedies when she receives a "right to sue" letter from the agency, after which the litigant has 90 days to file a lawsuit in court. See 42 U.S.C. § 2000e- 5(f)(1); *Noviello v. City of Boston*, 398 F.3d 76, 85 (1st Cir. 2005).

Defendants contend that plaintiff's Title VII claims should be dismissed because she has not exhausted her administrative remedies as to them individually. Defendants contend that plaintiff cannot properly bring a Title VII action against them in this Court because they were not named as respondents in the MCAD charge, did not participate in the MCAD proceedings, and had no knowledge that plaintiff intended to name them in a civil suit.

The First Circuit has not yet definitively established a standard governing the Court's determination of whether the failure to name a defendant as a respondent in the administrative

charge of discrimination precludes suit against that individual under Title VII.  Surveying the

case law of district courts within the First Circuit, Judge Nisi of the District of Rhode Island

provided an apt summary of the preferred approach:

> . . . courts should not apply an overly-technical pleading standard in passing on
> the viability of a claim against a defendant simply because that party was not
> explicitly identified in the administrative charge as a named respondent.  Rather,
> in determining whether all administrative remedies have been exhausted as to a
> particular party, courts should consider whether the body of the charge contains
> clear and specific allegations of wrongdoing pertaining to that party, as well as
> the extent to which, and in what capacity, the party participated in the
> administrative proceedings in an effort to resolve that party's interest in the
> dispute.

*Barber v. Verizon New England, Inc.*, 2005 U.S. Dist. LEXIS 38373, 8-9 (D.R.I. 2005).

The application of this fact-intensive standard to the facts alleged in this case is made

difficult by the *pro se* pleadings of the plaintiff.  Plaintiff makes no allegations about the

administrative process in this case.  Instead, most of the administrative record has come before

the Court by way of defendants' submissions.  In addition, defendants have made multiple

assertions about their lack of involvement in the administrative proceedings that appear to be

undisputed.  Under the circumstances, and because plaintiff cannot proceed against defendants

individually in any event, the Court will not reach the issue of whether plaintiff has exhausted

her administrative remedies.

### b.       Individual Liability

Finally, defendants contend that individual employees, as opposed to "employers,"

cannot be held liable under Title VII, and therefore the claims against them must be dismissed.

Under Title VII, an "employer" is prohibited from engaging in certain discriminatory

employment practices.  42 U.S.C. § 2000e-2(a)(1).  The statute defines the term "employer" as

"a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such person."  42 U.S.C. § 2000e(b).

The First Circuit has held "that there is no individual employee liability under Title VII." *Fantini v. Salem State College*, 557 F.3d 22, 31 (1st Cir. 2009).  In doing so, the court joined "every circuit court that has interpreted Title VII's definition of 'employer' and the majority of District Courts in the First Circuit . . . ."  *Healy v. Henderson*, 275 F. Supp. 2d 40, 44-45 (D. Mass. 2003) (collecting cases).  The court in *Fantini* reasoned that "[i]f Congress did not intend to protect small entities from the costs associated with litigating discrimination claims, it would not have limited liability to employers with fifteen or more employees."  557 F.3d at 30.  Thus, the court found it "inconceivable" that Congress intended to establish liability for individual employees when it enacted Title VII.  *Id.* at 31.

Accordingly, Title VII does not provide a basis for the plaintiff's claims against defendants Blake and Andersen.  Therefore, the defendants' motion to dismiss will be granted.

**III.    Conclusion**

For the foregoing reasons, defendant's motion to dismiss is GRANTED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated:  May 24, 2013

11